Personally I am strongly opposed to the theory of the legislation which gives to a city magistrate, on a summary conviction in offenses of this character, power which may render the party convicted subject to such term of detention as is provided in section 698 of the charter; but I cannot let my personal views on this important question blind me to the plain provisions of the law as they exist.

The act of which the prisoner has been adjudged guilty by the city magistrate can be held to constitute a misdemeanor under the Penal Code, in which event the city magistrate would have no jurisdiction. But it has been held by the Appellate Division in the First Department that these circumstances would not divest the city magistrate of jurisdiction, if such acts could at the same time be held to constitute the offense of "disorderly conduct" within the city of New York. People ex rel. Smith v. Van De Carr, supra.

The writ is therefore dismissed, and the prisoner remanded.

Writ dismissed, and prisoner remanded.

---

### CUNNINGHAM v. MUTUAL RESERVE LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department. April 24, 1908.)

1. CARRIERS—NEGLIGENCE—PASSENGER ELEVATORS—NEGLIGENCE OF OPERATOR—EVIDENCE.

Evidence *held* to support a finding that the operator of a passenger elevator in a building was guilty of negligence which resulted in the death of a person attempting to step into the elevator.

2. LANDLORD AND TENANT—LEASE—CONSTRUCTION.

A lease binding the landlord to operate passenger elevators in the leased building, and stipulating that the landlord shall not be liable for damages occasioned "by the elevators, boilers, machinery, or anything appertaining thereto," when construed, as it must be, most liberally in favor of the injured tenant, does not grant an immunity to the landlord for the negligence of the operator of an elevator.

3. NEW TRIAL—GROUNDS—SURPRISE.

The successful party will not be deprived of his verdict because the witness principally relied on by the defeated party surprised its counsel by giving testimony in support of the successful party, especially where the court permitted counsel to cross-examine the witness at length.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, New Trial, §§ 181–183.]

4. DEATH—DAMAGES—EXCESSIVE DAMAGES.

In an action for the negligent death of a middle-aged man in good health, earning $10,000 a year, contributing from $8,000 to $10,000 to the support of his family, consisting of his wife and three daughters, aged 17, 15, and 14 years, respectively, and maintaining a home worth $20,000, which he owned, and a summer residence, a verdict of $40,000 is not excessive, though decedent's age was not proved.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, §§ 125–130.]

Appeal from Trial Term, Kings County.

Action by Laura C. Cunningham, executrix of William B. Cunningham, deceased, against the Mutual Reserve Life Insurance Company. From a judgment for plaintiff, and from an order denying a motion for a new trial. defendant appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

William Hepburn Russell (Charles E. Rushmore, on the brief), for appellant.

John C. Robinson, for respondent.

MILLER, J.  The plaintiff's testator, a middle-aged man in good health, earning as much as $10,000 a year, and contributing from $8,-000 to $10,000 to the support of his family, consisting of himself, his wife, and three infant daughters, aged, respectively, 17, 15, and 14, met his death on the 21st day of July, 1904, as the result of an accident which a jury has found was due to the negligence of the defendant's servant, and for which it has awarded the sum of $40,000 damages.

The deceased was a tenant of the defendant.  His death resulted from a fall down an elevator shaft from the ninth floor of defendant's building, on which floor he had an office.  The evidence tends to show that the deceased was waiting to take the elevator, which was descending; that in its descent the elevator stopped at the ninth floor, and, as the deceased was about to step upon it, it suddenly started up, and he was precipitated down the shaft.  While the learned counsel for the appellant criticises the testimony of the witnesses tending to show this, there is really little dispute about it.  A witness called by the plaintiff testifies to it, and the operator of the elevator, called as a witness by the defendant, corroborated that version of the transaction, although it appeared that he had previously made an affidavit giving a different version.  Besides, the surrounding circumstances tend to support that version of the occurrence.  Immediately after the deceased had fallen, and during his descent, the elevator door was observed to be open, and the bottom of the car was seen coming to a stop a foot or two below the tenth floor.  The doors to the shaft could only be opened from the elevator.  The elevator and its appurtenances were examined immediately after the accident, and found to be in perfect order, and the elevator was continued in use without a change of any kind.  The testimony of the operator of the elevator, called by the defendant as aforesaid, is very unsatisfactory.  He admitted starting the elevator himself, and then retracted the statement.  He was a relief man, and says he had not been used to elevators operated by a lever, as this one was.  The sole question submitted to the jury respecting the defendant's negligence was whether the accident was due to the negligence of the man in charge of the elevator.  I think the evidence amply supports the finding that it was, and, indeed, no other satisfactory account of the occurrence is suggested.

The defendant had printed forms of leases which it made with its tenants.  Said leases contained the following provision, viz.:

"The said lessor will have in operation in said building passenger elevators, which are to be run during the ordinary business hours of every business day of the year, but not during public holidays or Sundays; it being, however, distinctly understood and agreed that said lessor shall not be liable for damage to

either person or property occasioned by the elevators, boilers, machinery, or anything appertaining thereto, the risk of such damage being assumed by the tenants."

The appellant contends that that provision exempted the defendant from liability for the negligence of the man in charge of the elevator. It is unnecessary to decide whether the strict rule of construction applied to contracts exempting common carriers from liability applies to this case; for, under the rule of Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292, the lease in question must be construed most liberally in favor of the tenant, and, thus construed, the language used does not admit of a construction which would grant immunity for negligence of the man in charge of the elevator. The accident in this case was occasioned by him, not "by the elevators, boilers, machinery, or anything appertaining thereto"; for it can hardly be contended that the man in charge was an appurtenance.

Point is made that the court erred in not allowing the defendant to cross-examine the witness Magee, who surprised counsel by giving testimony contrary to the sworn statement which he had previously made. This point is not raised by an exception, and the record discloses that the court did not permit the counsel to cross-examine his witness at length. Certain suggestions were made by the court and acquiesced in by counsel. It certainly would be unjust to deprive the plaintiff of her verdict simply because the witness principally relied upon by the defendant surprised its counsel by giving testimony in support of the plaintiff's case.

There was sufficient evidence to sustain the verdict, and we cannot say that it was excessive. While the plaintiff omitted to prove the exact age of the deceased, it does appear that he had sufficient expectancy of life to sustain the verdict awarded, in view of the proof of his earning power and the amount contributed by him to the support of his family. He maintained for them a home at Upper Montclair, N. J., worth $20,000, which he owned, and a summer residence at Saybrook, Conn. His three infant daughters lost not only what he contributed to their support, but the pecuniary value of a father's advice and care.

The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.